The STATE of Ohio, Appellee,

v.

METHENEY, Appellant.

[Cite as *State v. Metheney* (1993), 87 Ohio App.3d 562.]

Court of Appeals of Ohio,
Medina County.

No. 2158–M.

Decided May 5, 1993.

*Dean Holman,* Medina County Prosecuting Attorney, for appellee.

*Richard J. Marco,* for appellant.

BAIRD, Presiding Judge.

This cause comes before the court upon the appeal of Ann Metheney from her conviction in the Medina County Court of Common Pleas on one count of theft in office (R.C. 2921.41) and one count of dereliction of duty (R.C. 2921.44).

From 1981 until 1991, appellant served on the Board of Public Affairs for the village of Seville ("the board"); from 1987 until 1991 she was the board's president. The board is a three-member body charged with the supervision of the operation of public utilities and the collection of fees.

When a utility bill became delinquent, the office manager would notify the president of the board for action. Pursuant to R.C. 735.29 and board bylaws, it was the president's duty to then pursue recourse. The president could bring a lawsuit, start proceedings to establish a tax lien on the property and/or order the utility to be disconnected.

In 1989, the office manager became aware that significant delinquencies were accruing on the electricity account of appellant's husband, Donnie Metheney. These delinquencies were brought to appellant's attention on numerous occasions and, while a few payments on the account were made, the account was left largely unpaid. On September 6, 1991, the delinquency on appellant's residence was $4,535.19.

A similar situation developed involving a delinquency in the payment of electric bills at the Comfort Inn, where appellant was the manager and was in charge of paying bills. The owner of the Comfort Inn testified that it was not unusual to let some bills "ride" during the slow months and then pay them off when business

picked up. On October 7, 1991, the Comfort Inn's bill was overdue in the amount of $7,379.90. Despite numerous late notices sent by the office manager to the appellant's residence and the Comfort Inn, electricity was not ordered discontinued, nor were other actions of recourse for the village pursued.

Upon discovery of the delinquencies after a state audit, appellant was arrested and brought to trial.[1] The crux of the state's case was that appellant received free utilities by abusing her power as president of the board and not following proper procedures for collection of the bills owed.

Appellant was convicted of one count of dereliction of duty and one count of theft in office. The court granted appellant's Crim.R. 29 motion for acquittal on an additional charge of theft by deception (R.C. 2913.02[A][3]).

It is from her conviction that appellant now appeals, asserting three assignments of error.

### Assignment of Error I

"The trial court erred [in] overruling defendant-appellant's Criminal Rule 29 motion for a judgment of acquittal, as to all counts, made at the end of the state's case and renewed at the end of all the evidence."

Appellant argues that Crim.R. 29 motions for judgment of acquittal should have been granted as to the dereliction of duty and theft in office charges as well.

■ A trial court may not grant an acquittal by authority of Crim.R. 29(A) if the record demonstrates that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt. *State v. Wolfe* (1988), 51 Ohio App.3d 215, 216, 555 N.E.2d 689, 690. However, an appellate court must reverse a jury verdict if it finds a failure of substantial evidence which would lead a jury to conclude that each element of a charge has been proved. *State v. Eley* (1978), 56 Ohio St.2d 169, 10 O.O.3d 340, 383 N.E.2d 132.

The elements of the crime of dereliction of duty are set forth at R.C. 2921.44(E):

"No public servant shall recklessly fail to perform a duty expressly imposed by law with respect to his office, or recklessly do any act expressly forbidden by law with respect to his office."

■ Appellant alleges that the state failed to prove that she, as president, had a duty to initiate proceedings regarding the nonpayment of utility bills. This

---

1. Following the state audit, the bills were paid in full.

duty, she argues, is placed upon the board as a whole pursuant to R.C. 735.28 and 735.29 and, therefore, no duty was violated on her part. We disagree.

R.C. 735.29 gives the board power to establish its own rules and bylaws, and gives these rules and bylaws the effect of municipal ordinances. The board adopted a bylaw on July 6, 1981 which was still in effect during the relevant time period. This bylaw reads:

"If all avenues for collection of a delinquent account have been exhausted by the Office Manager, the President of the Trustees will then be notified and issue the authorization for a disconnection of service."

This bylaw, having the effect of a municipal ordinance, imposed a duty on the president, specifically, to disconnect electric service when all attempts to collect a delinquent bill have failed. The evidence showed that this duty was not performed by the appellant and, therefore, the Crim.R. 29 motion as to the dereliction of duty count was properly denied.

As to the theft in office count, however, a review of the record indicates that the Crim.R. 29 motion should have been granted. In order to be guilty of theft in office (R.C. 2921.41), a defendant must first be guilty of a theft (R.C. 2913.02). The relevant portion of the latter statute reads:

"(A) No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways:

"(1) Without the consent of the owner or person authorized to give consent;

"(2) Beyond the scope of the express or implied consent of the owner or person authorized to give consent[.]" [2]

The evidence does not support a conviction under subsections (A)(1) or (2). The owner of the electricity, the village of Seville, gave appellant consent to receive electricity. She received only as much electricity as the village intended to give her; that is, she was authorized to receive as much electricity as she could use. Therefore, R.C. 2913.02(A)(1) does not apply.

R.C. 2913.02(A)(2) also does not apply to the facts of this case. This subsection was meant to cover cases of embezzlement, where a person with lawful possession of property exerts control over that property so as to deprive the owner of the same. See Committee Comment to R.C. 2913.02. The state admits

---

**2.** R.C. 2913.02(A)(3) and (4) do not apply to this case. A theft by deception charge was disposed of by the trial court's Crim.R. 29 ruling, and there is no allegation of threat in the facts at issue. Furthermore, the bill of particulars issued by the state specified only subsections (A)(1) and (2) of R.C. 2913.02.

that this is not a case of embezzlement and alleges only that appellant "stole" electricity at the time it entered her residence.

Furthermore, even assuming the evidence supported a finding of theft under R.C. 2913.02(A)(1) or (2), the evidence is insufficient to prove beyond a reasonable doubt other elements of the crime. R.C. 2913.02 also requires a defendant to "obtain" property. The evidence here shows only that Donnie Metheney and the Comfort Inn, and not the appellant, actually obtained the electricity as the bills were in their names. Also, the statute requires the state to prove that the defendant "purposely" deprived the owner of property, that is, that she did not intend to pay for the electricity when she received it. While evidence that appellant did not pay the bills is some evidence that she intended not to pay them when she received the electricity, the state cites no authority for the proposition that nonpayment alone is sufficient to prove intent at the time of receipt.

For all of these reasons, we find that the trial court erred in denying appellant's Crim.R. 29 motion for a judgment of acquittal on the theft in office charge. The first assignment of error, in part, is well taken.

### Assignment of Error II

"The trial court abused its discretion [by] allowing the state to present evidence to the jury which was not relevant to an issue of consequence to the action and which prejudiced defendant-appellant depriving her of a fair trial."

Appellant alleges error in the admission of evidence regarding the day-to-day activities of the board, whether the other members of the board or other citizens paid their bills, and whether board members asked for the public's trust when running for office. Appellant argues that this evidence was not relevant to the charges against her.

Irrelevant evidence is not admissible. Evid.R. 402. However, evidence of the day-to-day activities of the board was relevant to whether the bylaw giving the president additional duties was being followed. Assuming the other evidence complained of was irrelevant, we find that its admission was harmless beyond a reasonable doubt. Crim.R. 52(A); *State v. Rahman* (1986), 23 Ohio St.3d 146, 150–151, 23 OBR 315, 318–319, 492 N.E.2d 401, 406–407. The evidence against appellant, at least with regard to the dereliction of duty charge, was overwhelming, given that it was her duty to initiate proceedings to disconnect service. The second assignment of error is overruled.

## Assignment of Error III

"The trial court erred [in] overruling defendant-appellant's motion to dismiss based upon a violation of her statutory right to a speedy trial."

Pursuant to R.C. 2945.71(B)(2), a person charged with a second degree misdemeanor must be brought to trial within ninety days of the arrest. Appellant argues that, because dereliction of duty (R.C. 2921.44) is a second degree misdemeanor, the motion to dismiss that charge should have been granted when she was not brought to trial within ninety days of the original indictment.

Appellant, however, was also charged with theft in office (R.C. 2921.41), a third degree felony. Where a person is held on both misdemeanor and felony charges, the time period for a speedy trial which applies to the felony charge is also applicable to the misdemeanor charge. *State v. Luehrs* (Sept. 2, 1987), Lorain App. No. 4163, unreported, at 6, 1987 WL 16653; *State v. Hearns* (Nov. 27, 1985), Summit App. No. 12093, unreported, 1985 WL 3994. A person held on a felony charge must be brought to trial within two hundred seventy days of his arrest. R.C. 2945.71(C)(2).

In this case, appellant was indicted on the felony charge on September 18, 1991. On April 28, 1992, appellant was indicted on the misdemeanor charge. Trial commenced on both charges on June 8, 1992, two hundred sixty-three days after the September indictment and forty-one days after the April indictment. Appellant alleges that her right to a speedy trial was violated because the state possessed all the information necessary to indict her on the misdemeanor in September and, therefore, the ninety-day time period should have begun running at that time. However, because she was being held on a felony charge as well, the state had two hundred seventy days from September 18, 1991 to bring her to trial on both counts. As the state met this deadline, the third assignment of error is overruled.

The judgment of the trial court is affirmed in part and reversed in part. The cause is remanded to the trial court for entry of a judgment consistent with this opinion.

*Judgment accordingly.*

Dickinson, J., concurs.

Reece, J., concurs in part and dissents in part.

Reece, Judge, concurring in part and dissenting in part.

I concur in affirming the defendant-appellant's conviction of dereliction of duty but I dissent from the reversal of her conviction of theft in office.

I believe the majority has misinterpreted the Committee Comment to R.C. 2913.02 and, thus, the provisions of the statute itself, and has overlooked certain facts as well.

The pertinent Committee Comment to R.C. 2913.02 reads in full:

"The section expands upon the common law requirement that the taking of property must occur simultaneously with a purpose to deprive the owner of the property. Formerly, a wrongful conversion or embezzlement could not constitute larceny, since the intent to deprive was formed after the property came into the offender's possession. *Berry v. State,* 31 Ohio St. 219, 27 Am.Rep. 506 (1877); *Porter v. State,* 8 Ohio App. 231 (Scioto Co.App., 1917). Under the new section, the basic elements of the offense must still coincide, but conversion or embezzlement now constitutes theft, since *the section defines theft as exerting control (as opposed to initially gaining control over property or services)* beyond the scope of the owner's consent, and with purpose to deprive the owner of the same." (Emphasis added.)

I believe there is sufficient evidence that Matheney exerted control over the electrical services of the village through the use of her office. She did not have to "obtain" the property (or services) as the majority asserts. Further, the village did not authorize her to receive as much electricity "as she could use," but rather to receive all she could use and would pay for. That is what she confined everyone else to.

Certainly, the law does not limit theft to what you receive yourself. A person can surely steal for another's benefit, especially a spouse or an employer.

Additionally, merely because a thief later pays for the stolen property or services does not invalidate the crime if the elements are there at the time of its commission.

Finally, there is ample evidence over and above the mere "nonpayment" for the electricity to present a question of purpose to deprive the owner. Matheney concealed the nonpayment, lied about it to others, prevented anyone else, including the other members of the board, from reviewing the records. And, it would appear, she cut off the service of all other delinquent customers except her husband and her employer.

I would affirm the judgment below in total.