OPINION
{¶ 1} Defendant, Brian L. Belt ("Belt"), appeals the jury verdict of theft by deception in the Common Pleas Court of Union County.
 {¶ 2} Belt entered into a written contract with Kevin Forder ("Forder") whereby Belt was to refurbish a barn owned by Forder. On March 23, 2003, Forder wrote a check to Belt in the amount of $2,075, which represented half of the total estimated cost of the work. Belt told Forder he would be able to begin the work approximately a week later, either on Friday, March 28, 2003 or Monday, March 31, 2003. Belt cashed the check from Forder on March 24, 2003.
 {¶ 3} After the date in which the work was to begin had passed and Belt had not begun work on the barn or contacted Forder, Forder and his wife made several attempts to contact Belt which were unsuccessful. Forder testified that starting in the beginning of April, he received the message "the subscriber was no longer receiving calls" when he attempted to reach Belt on his cell phone. Forder even sent a certified letter to Belt, who signed for the letter but did not contact Forder. Forder never saw or spoke to Belt after giving him the check. Forder did not receive any materials for his barn either.
 {¶ 4} Belt was indicted on one count of theft by deception, a felony of the fifth degree, in violation of R.C. 2913.02(A)(3). Belt entered a plea of not guilty and the matter was heard by a jury on August 20, 2003. The evidence at trial centered on the issue of whether Belt had the intent to commit theft at the time he accepted the check from Forder. Belt testified in his own defense that he was ready to perform the work on Forder's barn, and had even purchased the necessary materials prior to being indicted, but weather conditions prevented him from starting the refurbishing of the barn. Following the one-day trial, the jury found Belt guilty of theft. Belt now appeals the jury verdict, asserting the following two assignments of error.
The defendant was deprived of due process and fundamentalfairness due to ineffective assistance of counsel.
 The finding that defendant was guilty of theft was against themanifest weight of the evidence.
 {¶ 5} In his first assignment of error, Belt argues that his trial counsel was ineffective by failing to introduce evidence of his defense at trial. Specifically, Belt claims he provided counsel with numerous receipts indicating he bought materials for the refurbishing of Forder's barn that counsel never attempted to introduce. In addition, Belt claims his trial counsel was ineffective for failing to make a motion for a directed verdict following presentation of the state's or defense's case.
 {¶ 6} We begin by discussing the high burden on the defendant to show ineffectiveness on the part of trial counsel. The standard is set forth in Strickland v. Washington (1984),466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674, in which the Supreme Court held "[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." In order to meet this standard, a defendant is required to prove two components. Id. at 687. The first is to show that counsel's performance was deficient, which "requires showing that counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment." Id. The second component is to show that the deficient performance by counsel prejudiced the defense, which "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id. If a defendant fails to make both of these showings, his claim of ineffective assistance of counsel cannot stand. Id.
 {¶ 7} The general standard for counsel's performance is "reasonably effective assistance." Id. Therefore, Belt is required to show that the performance of his trial counsel fell below "an objective standard of reasonableness." Id. at 688. This court must make the inquiry into the reasonableness of counsel's performance by considering all of the circumstances in the case and the totality of the evidence before the jury. Id. at 695. In addition, counsel's performance must be evaluated from the perspective of counsel at the time of the proceeding. Id. at 689.
 {¶ 8} The presumption is in favor of counsel's conduct falling within the range of "reasonable professional assistance." Id. An error on the part of counsel will not warrant setting aside the judgment of the proceeding unless the error had an effect on that judgment. Id. at 691. In proving that he was prejudiced by his counsel's deficient performance, Belt "must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." State v. Bradley (1989), 42 Ohio St.3d 136, 143,538 N.E.2d 373.
 {¶ 9} Belt first asserts that trial counsel was ineffective for failing to make an attempt to introduce key exhibits into evidence. Specifically, Belt asserts that trial counsel should have made an effort to admit into evidence receipts for materials Belt purchased in order to do the requested work on Forder's barn. Belt also asserts that trial counsel should have obtained copies of the weather reports for the period of time in question and presented them at trial.
 {¶ 10} The record shows that Belt testified at trial regarding the specific materials he allegedly purchased for the purpose of refurbishing Forder's barn. Prior to Belt's testimony regarding these materials, the State objected to trial counsel's question of Belt regarding the actions Belt took to prepare for remodeling the barn on the grounds that the exhibits were not provided in response to discovery requested by the State pursuant to Crim.R. 16. The following interaction followed:
Ms. Pelanda: Well, in response, Mr. Schrader doesn't know whatI'm going to ask with regards (sic) to my next question of thewitness. I think the question has to be asked.
 Mr. Schrader: She shown (sic) the exhibits this morning.That's the first time I've seen them.
 Ms. Pelanda: I think the question has to be asked for theCourt to determine whether or not what I'm going to ask isobjectionable.
 The Court: I'll overrule the objection until we find out whatshe's giving him.
Tr. p. 90-91. Trial counsel then proceeded to ask Belt what specific materials he purchased to remodel the barn and the cost of those materials.
 {¶ 11} In addition to relaying for the jury the materials Belt alleges he purchased and the cost of the materials, Belt was also afforded the opportunity to explain why the receipts for the materials were not provided to the State in a timely manner to allow for the review of such evidence by the State prior to trial. The following testimony was given at trial:
Q: Mr. Belt, you've testified to various purchases you maderelative to this remodeling. Why did you not provide these to theState for their review prior to today's date?
 A: Well, I've been incarcerated since June 12th, so I hadtrouble getting them. I had to have my family — you know, I gotenvelopes full of receipts, and so it took some time for me toget them in here, and through the jail.
Tr. p. 97.
 {¶ 12} Furthermore, when trial counsel rested for the defense, she stated to the court, "[w]e recognize that due to the defendant's testimony that the receipts that we would like to admit to this Court cannot be submitted because they were not delivered in a timely basis according to the rules of law to the State of Ohio for examination." Tr. p. 116. Since trial counsel did not proffer the evidence to the trial court, which would have allowed the evidence to be included in the record for purposes of our review of the evidence on appeal, we are unable to make a determination regarding the effect the evidence may have had on the outcome of the case. On direct appeal, an appellate court is limited in its review of the evidence to that which is presented in the record of the trial court. Since the receipts are not part of the record of the trial court, we cannot review the receipts to determine what value, if any, they would have in this case. Therefore, we cannot determine whether failing to move to admit the receipts as evidence at trial or failing to proffer the evidence if the trial court denied admission of the receipts into evidence constitutes ineffective assistance of counsel. Thus, we may not second guess either counsel or the court and we presume the wisdom and regularity of the matters decided by them.
 {¶ 13} Belt also argues that failure on the part of trial counsel to obtain documents from the National Weather Bureau constitutes ineffective assistance of counsel because the weather reports would have added credibility to Belt's testimony and questioned the credibility of Forder's testimony. Belt testified at trial that his failure to complete the work on Forder's barn was due to extremely bad weather. Belt argues that since Forder testified that he could not recall the weather conditions for the time period in question, the weather reports would have proved Belt's testimony was more credible.
 {¶ 14} The failure of trial counsel to produce documents from the National Weather Bureau, based on the circumstances of this case, does not constitute ineffective assistance of counsel. Nor would the production of such evidence constitute conclusive proof that Belt was not guilty of theft by deception. Testimony regarding the weather conditions was heard by the jury for its consideration. Trial counsel effectively questioned Belt regarding the issue of the weather conditions and we cannot say that reports from the National Weather Bureau would have had any effect on the outcome of the trial.
 {¶ 15} Next, Belt asserts that his trial counsel was ineffective for failing to make a motion for a directed verdict, which we assume Belt meant as a motion for acquittal, at any time during the trial. Belt argues that the failure of trial counsel to make such motion did not give the judge an opportunity to dismiss the case. Belt further argues that the State failed to prove the key element of intent for the charge of theft by deception and, therefore, the trial court may have granted an acquittal in the case. However, Belt fails to offer support for this assertion.
 {¶ 16} We first point out that Crim.R. 29 states:
The court on motion of a defendant or on its own motion,after the evidence on either side is closed, shall order theentry of a judgment of acquittal of one or more offenses chargedin the indictment, information, or complaint, if the evidence isinsufficient to sustain a conviction of such offense or offenses.(Emphasis added.)
As the trial court could have, on its own motion, determined that the evidence was insufficient to sustain a conviction of theft by deception, the trial court was not deprived of all opportunity to dismiss the charges against Belt by trial counsel's failure to make a motion for acquittal.
 {¶ 17} Furthermore, as we discuss below, we find that Belt's conviction of theft by deception is not against the manifest weight of the evidence. Based on the same analysis, we find that the evidence would not support the trial court granting a motion for acquittal at trial. When viewing the evidence in the light most favorable to the State, the standard required for granting a motion made pursuant to Crim.R. 29, we determine that the State established a prima facie case on each essential element of the offense of theft by deception so that reasonable minds could reach different conclusions regarding whether each element had been proven beyond a reasonable doubt. State v. Bridgeman
(1978), 55 Ohio St.2d 261, 381 N.E.2d 184. Belt has failed to show that he was prejudiced by trial counsel's failure to make the motion for acquittal. Therefore, we conclude that trial counsel was not ineffective in this regard.
 {¶ 18} Having found no merit with Belt's claim of ineffective assistance of counsel, the first assignment of error is overruled.
 {¶ 19} In his second assignment of error, Belt asserts that the jury verdict is against the manifest weight of the evidence. Belt argues that the State did not present any proof that Belt had the intent to commit the offense, which is a key element of the offense of theft by deception.
 {¶ 20} In order for a court of appeals to reverse a trial court's judgment as being against the manifest weight of the evidence, the appellate court must unanimously disagree with the fact finder's resolution of any conflicting testimony. State v.Thompkins (1997), 78 Ohio St.3d 380, 678 N.E.2d 541. In determining whether to reverse a conviction on the manifest weight of the evidence, this court must "review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice * * *."State v. Martin (1983), 20 Ohio App.3d 172, 175,485 N.E.2d 717.
 {¶ 21} We further note that "the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." State v. DeHass (1967),10 Ohio St.2d 230, paragraph one of the syllabus, 227 N.E.2d 212.
Weight of the evidence concerns `the inclination of thegreater amount of credible evidence, offered in a trial, tosupport one side of the issue rather than the other. It indicatesclearly to the jury that the party having the burden of proofwill be entitled to their verdict, if, on weighing the evidencein their minds, they shall find the greater amount of credibleevidence sustains the issue which is to be established beforethem. Weight is not a question of mathematics, but depends on itseffect in inducing belief.'
Thompkins, 78 Ohio St.3d at 387 (citations omitted).
 {¶ 22} The indictment with which Belt was charged stated Belt "with purpose to deprive Kevin Forder, the owner, of property, did knowingly obtain or exert control over the property by deception." June 17, 2003 Judgment Entry. The State presented evidence at trial, through the testimony of Forder and Jeff Stiers, a detective with the Union County Sheriff's Office, that Belt contracted with Forder to refurbish his barn, accepted a check from Forder as down payment, cashed the check the day after receiving it and never refurbished Forder's barn or responded to Forder's numerous attempts to contact him. The State presented sufficient evidence of Belt's deceit in taking money from Forder. The State presented the jury with testimony that Belt accepted and cashed the check from Forder but did not have contact with Forder after that time and did not perform any work on Forder's barn or deliver any materials to Forder's residence. Both Forder and Stiers testified as to the numerous attempts they made to contact Forder after the date in which the check was given to Belt. In addition, the State pointed out possible money problems that could have been Belt's motivation for the theft.
 {¶ 23} In his defense, Belt testified that he had used the money received as a down payment from Forder to purchase materials to refurbish the barn. Belt also testified that he was unable to perform the work on the barn due to adverse weather conditions and that he had left two messages for Forder explaining his delay in beginning the work. The jury also heard testimony from Belt regarding his criminal record of five prior felony convictions, three of which were theft or attempted theft charges.
 {¶ 24} While Belt argues that this case is purely a civil matter, the case law cited by Belt is distinguishable from the facts in the instant case. Belt relies on the case of State v.Metheney (1993), 87 Ohio App.3d 562, 622 N.E.2d 730, which involved a defendant who had received electricity but failed to pay the bill for the services. While the court in Metheney
stated nonpayment alone was not sufficient to prove intent at the time of receipt, the court did state that defendant's failure to pay the bills was some evidence that she intended not to pay them when she received electricity. Id. at 567. However, the case sub judice differs in two important respects. First, Belt did not fail to pay for services rendered, rather Belt was the party who failed to provide services after he received money as a down payment for the services. Second, the State provided other evidence at trial that supported Belt's intent to commit theft by deception, such as the testimony that Belt could not be contacted after the date in which he received the money and that Forder never received the materials for the work.
 {¶ 25} Belt also cites the case of Orange Village v.Woolfolk (Oct. 5, 2000), 8th Dist. No. 77451, unreported, 2000 WL 1474506, *2, in which the court noted "[t]he civil law provides adequate remedies for breached contracts, and it appears that the complaining witness fully availed himself of the civil courts to obtain full restitution." The court also found that "the city supports the conviction on grounds that defendant's intent to commit theft could be inferred because he could not possibly have hoped to serve his three hundred customers with only four snow removal vehicles." Id. The record before the court showed that Woolfork had served some of his customers. TheWoolfork case differs from the case sub judice in that Belt did not simply make a poor business decision, as the court found Woolfork did, but rather Belt took money from Forder and was never seen or heard from by Forder again. Because Belt did not provide any services to Forder or deliver any materials to Forder's residence, this case is more similar to one in which the defendant took the money and ran. Furthermore, the complainant in the Woolfork case had received restitution from the defendant before he was tried in the criminal case. In the case sub judice, Belt had not attempted to perform the work on Forder's barn or return the down payment to Forder prior to the date of trial.
 {¶ 26} Finally, Belt cites State v. Coleman, 2d Dist. No. 2002 CA 17, 2003-Ohio-5724, 2003 WL 22429686, ¶ 31, in which the court found that the requisite intent of theft by deception was negated by Coleman's actions of doing a significant amount of work on the roofing job and obtaining materials to complete the job. The Coleman case differs from the case sub judice in that Belt never started the work on Forder's barn and never notified Forder whether materials had even been purchased for the work.
 {¶ 27} After reviewing the evidence in this case, we cannot state as a matter of law that the triers of fact clearly lost their way and created a manifest miscarriage of justice. We conclude that a rational trier of fact could have found Belt guilty of theft by deception beyond a reasonable doubt. The State presented evidence of the essential elements of the offense necessary for conviction upon which the jury could have based its decision that Belt was guilty of theft by deception.
 {¶ 28} The testimony of Forder, if believed by the jury, gives support to the conviction of Belt. Forder's testimony regarding Belt's actions, and more so Belt's inactions, was consistent with the elements of the offense. Belt exercised his right to testify in his own defense and he presented to the jury his defenses against the charge. The jury, being in a better position to weigh the evidence and determine the credibility of witnesses, reasonably concluded that Belt was guilty of theft by deception beyond a reasonable doubt. The circumstances in this case do not justify the granting of a new trial. Such discretionary power is reserved for the exceptional case in which the evidence weighs heavily against the conviction. Thompkins,78 Ohio St.3d at 389. We find that this is not one of those exceptional cases and hold that the jury verdict is not against the manifest weight of the evidence. Accordingly, we overrule Belt's second assignment of error.
 {¶ 29} Having found no merit with Belt's assignments of error, we affirm the judgment of the Common Pleas Court of Union County.
Judgment affirmed.
Shaw, P.J. and Cupp, J., concur.