[Cite as *State v. Dobbins*, 2011-Ohio-6777.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
WASHINGTON COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | Case No. 11CA6 |
| | : | |
| Plaintiff-Appellee, | : | |
| | : | DECISION AND |
| v. | : | JUDGMENT ENTRY |
| | : | |
| AMANDA L. DOBBINS, | : | |
| | : | **RELEASED 12/22/11** |
| | : | |
| Defendant-Appellant. | : | |

_____
APPEARANCES:

John A. Bay, BAY LAW OFFICE L.L.C., Columbus, Ohio, for appellant.

James E. Schneider, WASHINGTON COUNTY PROSECUTOR, and Alison L. Cauthorn, WASHINGTON COUNTY ASSISTANT PROSECUTOR, Marietta, Ohio, for appellee.
_____
Harsha, P.J.

{¶1}    A jury found Amanda Dobbins guilty of two counts of theft and two counts of forgery.  The charges stemmed from an incident in which Dobbins allegedly took two checks from her employer, Corvus Recycling L.L.C., and without permission made them payable to herself in various amounts.  Dobbins now appeals from her theft convictions.

{¶2}    For each theft conviction the jury found that Dobbins violated R.C. 2913.02(A)(1)-(3).  Dobbins contends that to the extent her convictions were based on violations of R.C. 2913.02(A)(1), they were against the manifest weight of the evidence because as Corvus' bookkeeper, she had permission to exert control over the checks. We agree that her conviction based on check number 1301 is against the manifest weight of the evidence but not her conviction based on check 1304.  Corvus' owner testified that in her position as the company's bookkeeper, Dobbins had authority to

possess checks and fill out certain sections of the checks for company purposes.

Therefore, when Dobbins made check 1301 payable to herself, she had Corvus'

permission to obtain and exert control over the check but acted outside the scope of its

consent, i.e. she violated R.C. 2913.02(A)(2), not R.C. 2913.02(A)(1).  However, the

State presented evidence that Dobbins executed check 1304 after Corvus terminated

her, i.e. after Corvus implicitly revoked Dobbins' consent to exert control over company

checks.  Thus, we reverse Dobbins' Count 1 theft conviction under R.C. 2913302(A)(1)

but we affirm the theft conviction for Count 2 under the same section.

{¶3}    Next, Dobbins argues that her convictions for theft under R.C.

2913.02(A)(2) and (A)(3) must be reversed because the trial court never instructed the

jury on these offenses.  The State concedes that the court did not instruct the jury on

these crimes.  And because a jury cannot convict on an offense for which it was never

instructed, we reverse Dobbins' theft convictions to the extent they are based on R.C.

2913.02(A)(2) and (A)(3).

{¶4}    Finally, Dobbins contends that counsel rendered ineffective assistance by

failing to object to her theft convictions based on R.C. 2913.02(A)(2) and (A)(3) because

the jury was not instructed on these offenses.  However, we have reversed the theft

convictions to the extent they were based on violations of these subsections.

Therefore, Dobbins' argument is moot.

## I.  Facts

{¶5}    A grand jury indicted Dobbins on two counts of theft, both under R.C.

2913.02(A)(1)-(3) and R.C. 2913.71(B),[1] and two counts of forgery, all fifth-degree

felonies.  Dobbins pleaded not guilty to the charges, and the matter proceeded to a jury

---

[1] The indictment mistakenly cites R.C. 2913.17(B).

trial. Although several witnesses testified at trial, only an abbreviated summary of the evidence is necessary.

{¶6} Brett Bringardner, owner of Corvus, testified that he hired Dobbins as a bookkeeper in September 2010. Dobbins' job responsibilities included preparing payroll checks for employees. Dobbins had authority to possess company checks while at the office and except for the signature line, to fill them out using a computer. However, Dobbins did not have permission to sign checks or take them from the office. Dobbins was supposed to prepare the checks at the office and give them to Bringardner for signature. Bringardner testified about two checks made out to Dobbins. On September 7, 2010, he noticed a $3,000 transaction on the general business checking account (as opposed to the payroll account) that he did not recognize. He sent Dobbins a text message about the transaction, which was based on company check number 1301. Dobbins responded via text that she took the money "to invest it -- to put it in an account as an investment to get us a greater return on our capital." Bringardner did not authorize this transaction, so he stopped payment on the check and terminated Dobbins the next day. Bringardner also testified about a second check, number 1304, made payable to Dobbins. The check was dated September 10, 2010, i.e. after Dobbins' termination, and made out for $3,200. Bringardner testified that he thought Dobbins signed both checks.

{¶7} Dobbins testified that as part of her job with Corvus, she prepared payroll checks. She entered employee hours in QuickBooks, then printed off and signed the payroll checks, including her own. Dobbins testified that she had Bringardner's permission to sign checks. In explaining the $3,000 check to herself, Dobbins testified

that during her interview with Bringardner, he told her that the company's bookkeeping really "needed to be caught up" and agreed that when Dobbins did that, she would get a $5,000 bonus. The day before she wrote the $3,000 check, Bringardner told her to make that payment to herself "because that's all that was in [the account] at the time." She explained there were two separate company bank accounts so that Bringardner's fiancée, who also worked for the company, would not learn of the arrangement. After she deposited the check, her bank contacted her and said there were insufficient funds to pay for that check and a separate $137 paycheck from Corvus she had deposited. Dobbins wrote a second check for $3,200 to get the $3,000 Bringardner promised her and to compensate herself for bank fees she incurred when the first check did not clear. Dobbins testified that after Bringardner's fiancée found out about the first check, "[e]verything changed" and Bringardner began to claim she was not authorized to write the checks.

{¶8} The jury found Dobbins guilty of the forgery offenses as charged and found her guilty of first-degree misdemeanor thefts, a lesser degree of the charged theft offenses. After the court sentenced Dobbins, she filed this appeal.

## II. Assignments of Error

{¶9} Dobbins assigns the following errors for our review:

ASSIGNMENT OF ERROR I:

The trial court violated Amanda L. Dobbins' right to due process and a fair trial when it entered a judgment of conviction for theft against the manifest weight of the evidence. Fifth and Fourteenth Amendments to the United States Constitution, and Section 16, Article I of the Ohio Constitution. (March 23, 2011 Journal entry: Sentencing Hearing; Sentencing Transcript Tr. 379-387).

ASSIGNMENT OF ERROR II:

The trial court violated Amanda L. Dobbins' right to due process and a fair trial when it entered judgments of conviction for theft when it failed to instruct the jury on the elements of the offense before it allowed the jury to deliberate and return a verdict. Fifth and Fourteenth Amendments to the United States Constitution, and Section 16 Article I of the Ohio Constitution. (March 23, 2011 Journal Entry: Sentencing Hearing;). Sentencing Transcript Tr. 355-366).

ASSIGNMENT OF ERROR III:

Trial counsel provided ineffective assistance, in violation of the Sixth and Fourteenth Amendments to the United States Constitution and Section 10, Article I of the Ohio Constitution, for failing to object to the trial court's jury instruction on the offense of theft. (March 23, 2011 Journal entry: Sentencing Hearing; Sentencing Transcript Tr. 355-366).

ASSIGNMENT OF ERROR IV:

The trial court committed plain error and denied Ms. Dobbins due process of law by failing to instruct the jury on the elements of the offense before allowing it to deliberate and return a verdict. Fifth and Fourteenth Amendments to the United States Constitution; Section 16, Article I of the Ohio Constitution; R.C. 2947.23; Crim.R. 52(B). (March 23, 2011 Journal Entry: Sentencing Hearing; Sentencing Transcript Tr. 355-366).

### III.  Manifest Weight of the Evidence

{¶10}  In her first assignment of error, Dobbins contends that her theft convictions under R.C. 2913.02(A)(1) were against the manifest weight of the evidence. "In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed." *State v. Brown*, Athens App. No. 09CA3, 2009-Ohio-5390, at ¶24, citing *State v. Thompkins*, 78 Ohio St.3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541. A reviewing court "may not reverse a

conviction when there is substantial evidence upon which the trial court could reasonably conclude that all elements of the offense have been proven beyond a reasonable doubt." *State v. Johnson* (1991), 58 Ohio St.3d 40, 42, 567 N.E.2d 266, citing *State v. Eskridge* (1988), 38 Ohio St.3d 56, 526 N.E.2d 304, at paragraph two of the syllabus.

{¶11} Even in acting as a thirteenth juror we must still remember that the weight to be given evidence and the credibility to be afforded testimony are issues to be determined by the trier of fact. *State v. Frazier*, 73 Ohio St.3d 323, 339, 1995-Ohio-235, 652 N.E.2d 1000, citing *State v. Grant*, 67 Ohio St.3d 465, 477, 1993-Ohio-171, 620 N.E.2d 50. The fact finder "is best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *Seasons Coal Co. v. City of Cleveland* (1984), 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (per curiam). Thus, we will only interfere if the fact finder clearly lost its way and created a manifest miscarriage of justice. Moreover, "[t]o reverse a judgment of a trial court on the weight of the evidence, when the judgment results from a trial by jury, a unanimous concurrence of all three judges on the court of appeals panel reviewing the case is required." *Thompkins*, supra, at paragraph four of the syllabus, construing and applying Section 3(B)(3), Article IV of the Ohio Constitution.

{¶12} The jury found Dobbins guilty of theft in violation of R.C. 2913.02(A)(1), which states: "No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways: * * * Without the consent of the owner or person authorized to give consent[.]" "Obtain" means "just what it says, to get, to secure possession of." *State v.*

*Healy* (1951), 156 Ohio St. 229, 239, 102 N.E.2d 233, quoting *Tingue v. State* (1914),

90 Ohio St. 368, 108 N.E. 222.  And "control" means:  "1. To exercise power or

influence over.  2. To regulate or govern.  3. To have a controlling interest in."  Black's

Law Dictionary (2nd Pocket Edition 2001) 143.

{¶13}  Dobbins contends that she was erroneously convicted under R.C.

2913.02(A)(1) because she had Corvus' consent "to obtain and exert control over the

business checks in the performance of her duties as the bookkeeper."  (Appellant's Br.

6).  She argues that the owner of Corvus testified that her duties included preparing

payroll checks for employees.  Even though Bringardner testified that she was not a

signatory on the business bank account, he "did not testify that she was prohibited from

obtaining and exerting control over the business checks in the performance of her

duties as the bookkeeper."  (Appellant's Br. 6).  And on cross-examination, Bringardner

testified that Dobbins "had the authority to possess the business checks."  (Appellant's

Br. 6).

{¶14}  Dobbins' argument suggests that given this evidence, she would more

properly have been convicted under R.C. 2913.02(A)(2) – which she complains the jury

was not instructed on in her second and fourth assignment of error discussed below.

R.C. 2913.02(A)(2) provides:  "No person, with purpose to deprive the owner of property

or services, shall knowingly obtain or exert control over either the property or services in

any of the following ways: * * * Beyond the scope of the express or implied consent of

the owner or person authorized to give consent[.]"  "Ostensibly, the purpose of R.C.

2913.02(A)(2) was to codify common law embezzlement in the theft statute."  *State v.

Dortch* (Oct. 15, 1999), Montgomery App. No. 17700, 1999 WL 819569, at *4.

"'Embezzle' is defined as 'willfully to take, or convert to one's own use, another's money or property, of which the wrongdoer acquired possession lawfully, by reason of some office or employment or position of trust.'" Id., quoting Black's Law Dictionary (6th ed. Rev.1990) 522. See, also, *State v. Metheney* (1993), 87 Ohio App.3d 562, 566, 622 N.E.2d 730, citing Committee Comment to R.C. 2913.02 (explaining that R.C. 2913.02(A)(2) "was meant to cover cases of embezzlement, where a person with lawful possession of property exerts control over that property so as to deprive the owner of the same"). Clearly, the legislature enacted the embezzlement subsection to address situations where an employee with consent exceeds its scope. If it felt the (A)(1) subsection already addressed that problem, it would not have needed to add (A)(2). See generally *Dortch* at *4-*5.

{¶15} Dobbins made check 1301 payable to herself and tried to negotiate it while employed as Corvus' bookkeeper. Bringardner testified that as bookkeeper, Dobbins could possess the checks at the office and prepare payroll checks, i.e. she could fill out blank checks except for the signature line. Thus Dobbins acquired possession of check 1301 lawfully, i.e. she obtained it with consent. And Dobbins had consent to fill out the check, i.e. she exercised power or control over it with consent. However, she acted *beyond the scope* of that consent when she made the check payable to herself without any company-related justification and signed it. Thus, while Dobbins may have embezzled from Corvus in violation of R.C. 2913.02(A)(2), no evidence supports a finding that Dobbins violated R.C. 2913.02(A)(1) because she had Corvus' consent to obtain and exert control over the check. Thus, we conclude the jury's verdict on Count 1 is against the manifest weight of the evidence to the extent the

jury found Dobbins violated R.C. 2913.02(A)(1).

**{¶16}** However, the State presented evidence that Dobbins made check 1304 payable to herself after Bringardner fired her. Bringardner fired Dobbins on September 8, 2010, and the second check was dated September 10, 2010. Although Dobbins may have obtained check 1304 while still employed by Corvus, when Bringardner fired Dobbins he implicitly revoked consent for her to exert control over company checks. See generally *State v. Frezgi*, Montgomery App. No. 22439, 2008-Ohio-4732, at ¶¶8-9 (finding employer's consent for employee to possess company cell phone ended with termination). Thus, the evidence reasonably supports the conclusion that Dobbins, with purpose to deprive Corvus of its property, knowingly exerted control over check number 1304 without consent in violation of R.C. 2913.02(A)(1). Thus, after reviewing the entire record, we cannot say that the jury lost its way or created a manifest miscarriage of justice when it found Dobbins guilty of the Count 2 theft offense based on that subsection.

**{¶17}** Accordingly, we overrule Dobbins' first assignment of error in part and sustain it in part. We affirm the Count 2 theft conviction based on R.C. 2913.02(A)(1). We reverse the Count 1 theft conviction based on R.C. 2913.02(A)(1) and remand so that the trial court can discharge Dobbins on the conviction under that subsection.

## IV. Jury Instructions

**{¶18}** In her second and fourth assignments of error, Dobbins complains that the trial court committed plain error when it convicted her of theft offenses under R.C. 2913.02(A)(2) and (A)(3) because the court did not instruct the jury on these subsections. The grand jury indicted Dobbins on two counts of theft, and both counts

alleged violations of R.C. 2913.02(A)(1)-(3).[2]  Similarly, the verdict forms for both counts

state:  "We, the jury, find the Defendant, Amanda Dobbins, <u>Guilty</u>* of the offense of

Theft, in violation of Ohio Revised Code 2913.02(A)(1)(2)&(3) a felony of the fifth

degree."[3]  And the trial court's sentencing entry indicates that the jury found Dobbins

guilty of violating all three subsections for each count.

{¶19}  However, Dobbins points out that the trial court only instructed the jury on

R.C. 2913.02(A)(1), i.e. theft by acting without consent, and not on R.C. 2913.02(A)(2)

or (A)(3), i.e. theft by acting beyond the scope of consent and theft by deception.  "As a

general rule, a defendant is entitled to have the jury instructed on all elements that must

be proved to establish the crime with which he is charged * * *."  *State v. Adams* (1980),

62 Ohio St.2d 151, 153, 404 N.E.2d 144.  See, also, R.C. 2945.11.  Generally our

review of whether a defendant was entitled to a jury instruction is de novo.  However,

because Dobbins failed to object to the jury instructions at the trial level, she has

forfeited all but plain error.

{¶20}  "Plain errors or defects affecting substantial rights may be noticed

although they were not brought to the attention of the court."  Crim.R. 52(B).  "A silent

defendant has the burden to satisfy the plain-error rule[,] and a reviewing court may

consult the whole record when considering the effect of any error on substantial rights."

---

[2] Crim.R. 7(B) provides that "[i]t may be alleged in a single count that the means by which the defendant committed the offense are unknown *or that the defendant committed it by one or more specified means.*" (Emphasis added).
[3] Although neither party disputes the fact that the jury found Dobbins guilty of first-degree misdemeanor theft offenses, the verdict forms state the jury found her guilty of fifth-degree felonies.  However, the jury also made a specific finding that the property involved in this case "was not** a pre-printed form for a check that on its face identified the drawer or maker for whose use it was designed or identifies the account of which it was drawn and that had not been executed by the drawer or maker, or on which the amount is blank."  Thus the jury found that the factor necessary to enhance the degree of the offenses from a first-degree misdemeanor to a fifth-degree felony was not present.  See R.C. 2913.02(B); R.C. 2913.71(B)

*State v. Davis*, Highland App. No. 06CA21, 2007-Ohio-3944, at ¶22, citing *United*

*States v. Vonn* (2002), 535 U.S. 55, 59, 122 S.Ct. 1043, 152 L.Ed.2d 90.

**{¶21}** For a reviewing court to find plain error: 1.) there must be an error, i.e., "a

deviation from a legal rule"; 2.) the error must be plain, i.e., "an 'obvious' defect in the

trial proceedings"; and 3.) the error must have affected "substantial rights," i.e., it must

have affected the outcome of the proceedings. *State v. Barnes*, 94 Ohio St.3d 21, 27,

2002-Ohio-68, 759 N.E.2d 1240. Furthermore, the Supreme Court of Ohio has

admonished courts that notice of plain error under Crim.R. 52(B) is to be taken "with the

utmost caution, under exceptional circumstances and only to prevent a manifest

miscarriage of justice." Id., quoting *State v. Long* (1978), 53 Ohio St.2d 91, 372 N.E.2d

804, at paragraph three of the syllabus.

**{¶22}** The State concedes, and we agree, that the trial court never instructed the

jury on theft under R.C. 2913.02(A)(2) and (A)(3). However, the State argues that we

should not notice "plain error" in this situation. The State claims the court's error is "not

outcome determinative" because the jury still found Dobbins guilty of the theft offenses

on an alternative basis, i.e. R.C. 2913.02(A)(1).

**{¶23}** "Quite simply, a jury cannot convict on an offense for which it was never

instructed." *State v. Chamblin*, Adams App. No. 02CA753, 2004-Ohio-2252, at ¶14.

Regarding Count 1, we already determined that the jury improperly found Dobbins guilty

based on R.C. 2912.02(A)(1). Thus the court's error in the jury instructions is clearly

"outcome determinative" because without an instruction on R.C. 2913.02(A)(2) and

(A)(3), no basis exists for Dobbins' theft conviction on this count.

**{¶24}** Moreover, as to Count 2, even though we upheld the conviction to the

extent it was based on R.C. 2912.02(A)(1), the fact remains that the sentencing entry indicates that the jury found Dobbins guilty based on violations of subsections (A)(2) and (A)(3) of the statute even though the jury was not instructed on those methods of theft.  Dobbins is prejudiced by having a criminal record that will reveal convictions for a theft offense based on three alternative methods when she only committed these crimes in one manner.  See generally *State v. Underwood*, 124 Ohio St.3d 365, 2010-Ohio-1, 922 N.E.2d 923, at ¶31 ("[A] defendant is prejudiced by having more convictions than are authorized by law.").  Moreover, the trial court improperly considered R.C. 2913.02(A)(2) and R.C. 2913.02(A)(3) as providing a basis for Dobbins' conviction when it sentenced her on Count 2.  Even though the court had discretion in determining Dobbins' sentence, the court had no discretion to rely on improper factors to select it.  See generally *State v. Davis*, Washington App. No. 09CA28, 2010-Ohio-555, at ¶25.

{¶25}  Accordingly, we sustain Dobbins' second and fourth assignments of error.  We reverse her theft convictions to the extent they are based on R.C. 2913.02(A)(2) and (A)(3).  We remand so that the trial court can discharge her on the theft convictions under those subsection.

{¶26}  Given our resolution of the first assignment of error, no basis exists for Dobbins' theft conviction on Count 1, so on remand the trial court must completely discharge Dobbins on that count.  However, an alternative basis – R.C. 2913.02(A)(1) – still supports Dobbins' theft conviction on Count 2.  See Section III, supra.  But because the trial court improperly relied on R.C. 2913.02(A)(2) and (A)(3) in sentencing Dobbins for this conviction, we vacate her sentence for Count 2 and also remand so that the court can resentence Dobbins based solely on her violation of R.C. 2913.02(A)(1).  We

stress that our decision does not necessarily require that the trial court impose a lighter sentence on remand. The trial court may determine that, taken together, the pertinent sentencing factors still warrant the same sentence the court previously imposed. Our decision simply mandates that, in determining her sentence, the trial court may not consider R.C. 2913.02(A)(2) or (A)(3) as providing an alternative basis for Dobbins' Count 2 theft conviction.

## V. Ineffective Assistance of Counsel

**{¶27}** In her third assignment of error, Dobbins contends that trial counsel rendered ineffective assistance. Dobbins complains that trial counsel should have objected to her theft convictions to the extent they were premised on violations of R.C. 2913.02(A)(2) and (A)(3) because the court never instructed the jury on these offenses. However, we have already reversed the theft convictions to the extent they were based on a violation of these subsections. Therefore, we find this assignment of error moot and do not address it. See App.R. 12(A)(1)(c).

## VI. Conclusion

**{¶28}** We overrule Dobbins' first assignment of error in part and sustain it in part. We sustain her second and fourth assignments of error. This decision renders moot Dobbins' third assignment of error. Accordingly, we affirm the trial court's judgment in part, reverse it in part, and remand this matter for further proceedings consistent with this opinion.

JUDGMENT AFFIRMED IN PART,
REVERSED IN PART,
AND CAUSE REMANDED.

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT IS AFFIRMED IN PART AND REVERSED IN PART and that the CAUSE IS REMANDED. Appellant and Appellee shall split the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Washington County Common Pleas Court to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.

Abele, J. & McFarland, J.: Concur in Judgment and Opinion.


For the Court


BY: _____
      William H. Harsha, Presiding Judge




### NOTICE TO COUNSEL

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**