[Cite as *State v. Newcomb*, 2024-Ohio-805.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
LAWRENCE COUNTY

STATE OF OHIO,                          :
                                        :        Case No. 21CA18
     Plaintiff-Appellee,              :
                                        :
v.                                      :        <u>DECISION AND JUDGMENT</u>
                                        :        <u>ENTRY</u>
JAMES V. NEWCOMB,                       :
                                        :        **RELEASED: 02/27/2024**
     Defendant-Appellant.             :

_____

<u>APPEARANCES</u>:

Jonathan T. Tyack and Madison Mackay, The Tyack Law Firm, Co., L.P.A., Columbus, Ohio, for appellant.

Brigham M. Anderson, Lawrence County Prosecuting Attorney, and Steven K. Nord, Assistant Lawrence County Prosecutor, Ironton, Ohio, for appellee.

_____

Wilkin, J.

{¶1} This is an appeal from a Lawrence County Court of Common Pleas judgment of conviction in which the jury found appellant, James V. Newcomb, guilty of assault, felonious assault, and theft. The trial court imposed an aggregate minimum prison term of four years and a maximum prison term of six years. Newcomb challenges his felonious assault and theft convictions on several grounds.

{¶2} First, Newcomb argues the jury lost its way in finding his co-defendant Shannon Clark credible and convicting Newcomb of theft. We disagree. The evidence at trial established that Newcomb smacked the drone's remote control from Steve Hindi's hand and it fell on the ground. Newcomb then picked up the drone's remote control and smashed it against his mailbox. At this

point, while the drone was in the air, it started flying everywhere.  After Newcomb physically assaulted Hindi and threatened him to either leave or die, Hindi left the area without his drone and without the remote control.  Clark testified that later he saw the drone and the remote control in Newcomb's firepit where they were burnt.   We defer to the jury's assessment of Clark's credibility as it was in the best position to gauge his demeanor, gestures, and voice inflictions, and hold that Newcomb's theft conviction was supported by the manifest weight of the evidence.

{¶3} Second, Newcomb argues the trial court abused its discretion when it instructed the jury in Counts One, Three and Four of complicity.  Newcomb's claim mainly focuses on Count Three, theft, and argues that there was no evidence that supported the claim Newcomb was complicit in the theft of the drone.  We first note, as is well-established, that a defendant is on notice that the jury may be instructed on complicity even if the defendant is charged as a principal offender.  Further, the evidence established Newcomb committed the theft of the drone as a principal offender as well as a complicit.  Newcomb smashed and destroyed Hindi's drone's remote control, physically assaulted Hindi with the help of Clark, and then Newcomb threatened Hindi to leave or die.  Hindi left without his drone or remote control.  Contrary to Newcomb's argument, Clark was found to be credible by the jury and he testified that Newcomb picked up the remote control from the ground and that the drone was in Newcomb's firepit before it was lit by someone else.  Thus, the trial court properly instructed the jury on complicity.

{¶4} Third, Newcomb argues the trial court erred when it denied his Crim.R. 29 motion for acquittal as to Count Three, theft. He contends there was insufficient evidence to convict him of the theft of the drone. His claim lacks merit. We previously under the first assignment of error found that Newcomb's theft conviction was supported by the manifest weight of the evidence. This conclusion is dispositive of a sufficiency of the evidence challenge. We thus, uphold Newcomb's theft conviction.

{¶5} Fourth, Newcomb argues the trial court erred when it admitted hearsay evidence identifying the Chevy tan truck that struck Adam Fahnestock's SUV as belonging to Newcomb's wife. During his direct examination, Detective Sergeant Aaron Bollinger testified that as part of his investigation, he ran the Chevy tan truck's VIN number using a national database and determined it belonged to Newcomb's wife. Newcomb claims the admission violated the rules of evidence and the Confrontation Clause of the Sixth Amendment. Newcomb did not raise the Confrontation Clause violation at trial, thus, we will not address it. As for the hearsay violation argument, we find the admission of the testimony was harmless as it was cumulative to other testimony previously admitted at trial that identified Newcomb as the driver of the Chevy tan truck.

{¶6} Finally, Newcomb argues his indefinite sentence under the Reagan Tokes Law violates the separation-of-powers doctrine, his right to a jury trial, his right to due process, and violates double jeopardy. The first three challenges have recently been rejected by the Supreme Court of Ohio in *State v. Hacker*, __ Ohio St.3d __ , 2023-Ohio-2535, __ N.E.3d __. As a court bound to follow the

Supreme Court of Ohio, we reject Newcomb's first three challenges.  As to his double jeopardy claim, we similarly reject it since Newcomb is not facing retrial under the Reagan Tokes Law sentencing scheme, and he is being punished only once for the felonious assault conviction.

## FACTS AND PROCEDURAL BACKGROUND

{¶7} Steve Hindi is the founder and president of SHARK ("Showing Animals Respect and Kindness").  On January 3, 2021, Hindi, and two of his SHARK colleagues, Adam Fahnestock and Michael Kobliska, drove to Lawrence County, Ohio, to investigate a claim that cockfighting was occurring in that area.  They came prepared with investigatory equipment, including handheld camcorders, body cameras, walkie-talkies, and drones.  They had two rental vehicles, a blue and a white SUV.

{¶8} At approximately 9:40 a.m., Hindi drove the blue SUV to Newcomb's property, where cockfighting was suspected to be occurring.  Fahnestock was in the passenger seat.  Both Hindi and Fahnestock were wearing body cameras and Fahnestock was also recording with the use of a camcorder.  Hindi parked the SUV before reaching the gate.  Hindi on foot approached the open gate leading to Newcomb's house in which Shannon Clark and Scott Aldridge were standing at each side of the gate.  Hindi asked if there was a church service or a special event as many vehicles could be seen on the property.  This is when Clark inquired who Hindi was and why was he there.  Hindi did not respond to these questions but when Clark asked him to step back behind the gate, Hindi complied and began to walk back towards the blue SUV.  Clark then closed the

gate.

{¶9} Hindi went to the trunk of the blue SUV and informed Fahnestock to keep an eye on Clark and Aldridge, and if there is any movement to move over to the driver's side and drive off. While Fahnestock was keeping a lookout, and transferred over to the driver seat, Hindi was setting up a drone. As soon as Hindi flew the drone up, you can hear a gentleman telling him to set it back down, and then from Fahnestock's camcorder, you see Newcomb, who was radioed in by Aldridge, open the gate and start heading toward Hindi. From Hindi's camera in his ballcap and Fahnestock's camcorder and body camera, Newcomb is seen striking Hindi's hand causing the drone's remote control to fall to the ground. Newcomb then picks up the remote control and smashes it on his mailbox. The altercation continues with Newcomb rushing toward Hindi and trying to kick him. Newcomb even attempted to break the driver-side window of the blue SUV by slamming the remote control on the window.

{¶10} This is when Hindi told Fahnestock to drive off. From the side mirror of the blue SUV, as recorded by Fahnestock's camcorder, you can see Newcomb body slam Hindi against the car. Hindi fell down and from his ballcap camera you hear him scream as he is kicked by Newcomb and Clark. Hindi in his testimony elaborated that Newcomb and Clark beat him with the use of their fists, legs, and struck him on the back of the head with an object. The screams you hear in the video, Hindi explained, were from the kicks to the ribs. Because of this physical assault, Hindi suffered a broken rib, laceration to the back of the head, separation in his back, and several bumps and bruises. As Hindi was on

the ground, you hear Newcomb tell him "last chance, leave or die."

{¶11} Hindi got up and began walking away from Newcomb's property and towards the street. Clark followed him for a short period. As Hindi was walking, he looked down at his vest, and as his ballcap camera was still recording, you can see both of his body cameras were missing and blood can be seen on the vest. Hindi testified that he was assaulted a second time by Newcomb. After walking for a distance, Hindi saw a parked semi-truck driver and asked if he had cell service to contact authorities. While conversing with the semi-truck driver, Newcomb approached driving a tan truck. After Newcomb saw Hindi, he stopped, and assaulted Hindi again using his fist and legs. Hindi was able to obtain the tan truck's license plate number before Newcomb left. After this second assault, Hindi decided to go into the woods and hide until he could reach one of his colleagues to pick him up.

{¶12} Newcomb's assault continued with him now targeting Fahnestock. After driving off, Fahnestock drove around trying to find Kobliska. He was not able to find him so he kept driving before stopping and getting out a walkie-talkie from the trunk. As soon as he got the walkie-talkie, Hindi was reaching out asking for Fahnestock to pick him up. Fahnestock told Hindi he thinks he is being followed, and at that point, Hindi told him to just keep driving and get out of here. Fahnestock continued to drive and he mentions that he is still being followed. Fahnestock's comments are recorded through his body camera that has been continuously recording. Around 11 a.m., Fahnestock speeds up and shortly thereafter you see his body jerk and hear a bump. After the sixth bump,

Fahnestock loses control and crosses the lane and ends up in a deep ditch.

{¶13} From the body camera, a tan truck is seen driving off as Fahnestock is in the ditch and his body is sideways. As part of the investigation, Detective Sergeant Aaron Bollinger obtained a homeowner's security surveillance video that had recorded the accident. As described by Detective Sergeant Bollinger, the Chevy tan truck did a pit maneuver on Fahnestock's vehicle in which the truck hit the SUV on the corner causing it to spin out of control. The video also showed Clark and another passenger exit the truck with the truck driving off.

{¶14} Fahnestock was sore for a week, had discomfort in his neck, both arms, down his legs, and had some scrapes and cuts. Because of the accident, Fahnestock received chiropractic treatment.

{¶15} As a result of his conduct on January 3, 2021, Newcomb was charged with four offenses: Count One, felonious assault with Hindi as the victim; Count Two, felonious assault with Fahnestock as the victim; Count Three, theft as a fifth-degree felony for the theft of the drone; and Count Four, tampering with evidence. Newcomb pleaded not guilty and the matter proceeded to a two-day jury trial. The jury found Newcomb guilty of the lesser offense of assault in Count One, guilty as charged of felonious assault in Count Two, guilty of theft as charged in Count Three, and not guilty of tampering with evidence.

{¶16} The trial court imposed 180 days in jail for the assault conviction, a minimum prison term of 4 years and maximum prison term of 6 years for the felonious assault conviction, and 12 months in prison for the theft offense. The trial court ordered the sentences to be served concurrently. It is from this

judgment of conviction entry that Newcomb appeals.

## ASSIGNMENTS OF ERROR

I.      DEFENDANT'S CONVICTIONS FOR FELONIOUS ASSAULT (COUNT II) AND THEFT (COUNT III) WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

II.     THE TRIAL COURT ERRED WHEN IT GRANTED THE STATE'S MOTION TO AMEND THE INDICTMENT AND PRESENTED A COMPLICITY JURY INSTRUCTION FOR AIDING AND ABETTING AS TO COUNT III (THEFT).

III.    THE TRIAL COURT ERRED IN DENYING DEFENDANT'S MOTIONS FOR ACQUITTAL UNDER CRIM. R. 29(A) & (C) AS THERE WAS INSUFFICIENT EVIDENCE TO SUSTAIN A CONVICTION AS TO COUNT III (THEFT).

IV.     THE TRIAL COURT ERRED BY ADMITTING THE HEARSAY TESTIMONY OF DET. BOLLINGER.

V.      MR. NEWCOMB'S INDEFINITE SENTENCE UNDER THE REAGAN TOKES ACT VIOLATES HIS CONSTITUTIONAL RIGHTS UNDER THE OHIO CONSTITUTION AND THE U.S. CONSTITUTION.

## ASSIGNMENT OF ERROR I

{¶17} In the first assignment of error, Newcomb argues the state failed to present any evidence that he withheld or disposed of the drone.[1]  According to Newcomb, the evidence was conflicting, where Steve Hindi and Shannon Clark presented contradictory testimony with regard to the drone.  Hindi testified that the drone was still in the air, but Clark testified that Newcomb got the drone down but did not explain how that was done.  The state had the alternate theory that destroying the remote deprived Hindi of the drone.  But the state failed to present

---

[1] Newcomb withdrew his challenge to Count Two, felonious assault, after submitting the brief and confirmed the withdrawal of the challenge to that count at oral argument.  Accordingly, we will solely address the theft conviction under the first assignment of error.

any evidence regarding the effect of the remote control's incapacity on the drone. Due to inconsistent testimony, Newcomb asserts the theft conviction cannot stand as it is not supported by the manifest weight of the evidence.

{¶18} The state disagrees and maintains that Newcomb smashed the remote control and because of that action, the drone remained hovering over Newcomb's property until the battery died and Hindi could not retrieve the drone as he was assaulted and chased away. There was thus direct evidence and additional circumstantial evidence that Newcomb deprived Hindi of being able to retrieve the drone. There was also direct evidence from Clark of the fate of the drone being burnt in the firepit at Newcomb's property. The state asserts that the jury did not lose its way in finding Clark's testimony credible and there was evidence of the value of the lost drone of more than $2,500.

Law and Analysis

{¶19} In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court reviews the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997), citing *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). "Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court

as being against the manifest weight of the evidence." *C.E. Morris Co. v. Foley*

*Const. Co.*, 54 Ohio St.2d 279, 376 N.E.2d 578 (1978), syllabus.

> Circumstantial evidence and direct evidence inherently possess the same probative value and therefore should be subjected to the same standard of proof. When the state relies on circumstantial evidence to prove an essential element of the offense charged, there is no need for such evidence to be irreconcilable with any reasonable theory of innocence in order to support a conviction.

*State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph one of the syllabus.

{¶20} The weight and credibility of evidence are to be determined by the trier of fact. *State v. Kirkland*, 140 Ohio St.3d 73, 2014-Ohio-1966, 15 N.E.3d 818, ¶ 132. The trier of fact "is free to believe all, part or none of the testimony of any witness," and we "defer to the trier of fact on these evidentiary weight and credibility issues because it is in the best position to gauge the witnesses' demeanor, gestures, and voice inflections, and to use these observations to weigh their credibility." *State v. Dillard*, 4th Dist. Meigs No. 13CA9, 2014-Ohio-4974, ¶ 28, citing *State v. West*, 4th Dist. Scioto No. 12CA3507, 2014-Ohio-1941, ¶ 23.

{¶21} In addition, "[a] verdict is not against the manifest weight of the evidence because the finder of fact chose to believe the State's witnesses." *State v. Chancey*, 4th Dist. Washington No. 15CA17, 2015-Ohio-5585, ¶ 36, citing *State v. Wilson,* 9th Dist. Lorain No. 12CA010263, 2014-Ohio-3182, ¶ 24, citing *State v. Martinez,* 9th Dist. Wayne No. 12CA0054, 2013-Ohio-3189, ¶ 16. Moreover, " '[w]hile the jury may take note of inconsistencies and resolve or discount them accordingly, * * * such inconsistences (sic.) do not render

defendant's conviction against the manifest weight or sufficiency of the evidence.' " *State v. Corson*, 4th Dist. Pickaway No. 15CA4, 2015-Ohio-5332, ¶ 31, quoting *State v. Proby*, 10th Dist. Franklin No.15AP-1067, 2015-Ohio-3364, ¶ 42, citing *State v. Gullick*, 10th Dist. Franklin No. 13AP-317, 2014-Ohio-1642, ¶ 10.

{¶22} In the matter at bar, the state alleged Newcomb committed theft by taking control of Hindi's drone and destroying it, thus, depriving Hindi from recovering the drone.  To prove Newcomb committed theft, the state was required to prove that he "with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways: (1) Without the consent of the owner or person authorized to give consent[.]"  R.C. 2913.02(A)(1).  "A person acts purposely when it is the person's specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is the offender's specific intention to engage in conduct of that nature."  R.C. 2901.22(A).  Deprive means to do any of the following:

> (1) Withhold property of another permanently, or for a period that appropriates a substantial portion of its value or use, or with purpose to restore it only upon payment of a reward or other consideration;
> (2) Dispose of property so as to make it unlikely that the owner will recover it;
> (3) Accept, use, or appropriate money, property, or services, with purpose not to give proper consideration in return for the money, property, or services, and without reasonable justification or excuse for not giving proper consideration.

R.C. 2913.01(C).

A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist. When knowledge of the existence of a particular fact is an element of an offense, such knowledge is established if a person subjectively believes that there is a high probability of its existence and fails to make inquiry or acts with a conscious purpose to avoid learning the fact.

R.C. 2901.22(B).

**{¶23}** We previously additionally defined:

"Obtain" means "just what it says, to get, to secure possession of." *State v. Healy* (1951), 156 Ohio St. 229, 239, 102 N.E.2d 233, quoting *Tingue v. State* (1914), 90 Ohio St. 368, 108 N.E. 222. And "control" means: "1. To exercise power or influence over. 2. To regulate or govern. 3. To have a controlling interest in." Black's Law Dictionary (2nd Pocket Edition 2001) 143.

*State v. Dobbins*, 4th Dist. Washington No. 11CA6, 2011-Ohio-6777, ¶ 12.

**{¶24}** Applying the theft statutory provision and the definitions as outlined above, we find that the jury did not lose its way by convicting Newcomb of theft. There was direct evidence that Newcomb snatched the drone's remote control from Hindi's hand, smashed it against the mailbox, and then dropped it on the ground away from Hindi. Thus, Newcomb knowingly exerted control over the drone's remote control, and consequently the drone. Moreover, Newcomb after physically assaulting Hindi, threatened him to leave or die; therefore, not permitting Hindi to retrieve the broken remote control or the drone.

**{¶25}** There was additional evidence as to the fate of the drone directly from Newcomb, in which during his interview with Detective Sergeant Bollinger, Newcomb stated that after smashing the remote control against the mailbox, the drone went everywhere. Even though Newcomb claimed he did not know where

the drone ended up, Clark testified that he observed the drone and the remote control in Newcomb's firepit before the firepit was started.  The jury, as the trier of fact, found Clark's testimony to be credible and we defer to the jury's credibility determination.

**{¶26}** Finally, the value to replace the drone, the remote control, and the memory card that was inside the drone, is approximately $2,500.  This amount is above the minimum threshold to support the theft offense as a fifth-degree felony.  *See* R.C. 2913.02(B)(2) (for fifth-degree felony, the value must be more than $1,000 and less than $7,500.)

**{¶27}** Accordingly, we hold that the manifest weight of the evidence supports Newcomb's theft conviction and overrule his first assignment of error.

## ASSIGNMENT OF ERROR II

**{¶28}** In the second assignment of error, Newcomb argues the trial court erred when it overruled his objection and granted the state's request to include complicity instructions as to Counts One, Three, and Four.  Newcomb maintains the trial court's decision was an abuse of discretion because the evidence did not support such an instruction.  According to Newcomb, the only evidence in support of the instruction came from the co-defendant Shannon Clark, and moreover, as to Count Three, there was no evidence to support the conviction as an aider or abettor.

**{¶29}** In support of his argument, Newcomb attacks Clark's credibility and inconsistent testimony citing the following points.  Clark for the first time at trial testified that he witnessed individuals burning the drone and cameras on

Newcomb's property. But yet, Clark could not recall who had the drone's remote control. Clark could not identify who placed the drone and cameras in the firepit and he did not get close enough to the firepit to see the objects. Clark could not definitively testify that Newcomb burnt or aided in the burning of the objects. Thus, the instructions were improperly given to the jury.

{¶30} The state disagrees and asserts that the trial court did not abuse its discretion in granting its request because there was evidence that Newcomb participated in the burning of the drone. The weighing of Clark's credibility was left to the trier of fact and Clark testified that he observed the drone in the firepit and Newcomb at the firepit.

Law and Analysis

{¶31} We find no abuse of discretion by the trial court in instructing the jury of complicity. "A charge of complicity may be stated in terms of this section, or in terms of the principal offense." R.C. 2923.03(F). The Supreme Court of Ohio made it clear that R.C. 2923.03(F) "adequately notifies defendants that the jury may be instructed on complicity, even when the charge is drawn in terms of the principal offense." *State v. Hand*, 107 Ohio St.3d 378, 2006-Ohio-18, 840 N.E.2d 151, ¶ 181.

{¶32} We previously summarized the trial court's duty to provide the jury with full and complete instructions:

> A trial court generally has broad discretion in deciding how to fashion jury instructions. *State v. Hamilton*, 4th Dist. Scioto No. 09CA3330, 2011-Ohio-2783, 2011 WL 2397088, ¶ 69. However, "a trial court must fully and completely give the jury all instructions which are relevant and necessary for the jury to weigh the evidence and discharge its duty as the fact finder." *State v. Comen*, 50 Ohio St.3d

206, 553 N.E.2d 640 (1990), paragraph two of the syllabus. "Additionally, a trial court may not omit a requested instruction, if such instruction is 'a correct, pertinent statement of the law and [is] appropriate to the facts * * *.' " *Hamilton* at ¶ 69, quoting *State v. Lessin*, 67 Ohio St.3d 487, 493, 620 N.E.2d 72 (1993). "When reviewing a trial court's jury instructions, the proper standard of review for an appellate court is whether the trial court's refusal to give a requested jury instruction constituted an abuse of discretion under the facts and circumstances of the case." *State v. Ellis*, 5th Dist. Fairfield No. 02 CA 96, 2004-Ohio-610, 2004 WL 251809, ¶ 19.

*State v. Jones*, 4th Dist. Ross No. 16CA3574, 2018-Ohio-239, ¶ 10.

**{¶33}** "An abuse of discretion connotes more than a mere error of judgment; it implies that the court's attitude is arbitrary, unreasonable, or unconscionable." *State v. Ables*, 4th Dist. Pickaway No. 11CA22, 2012-Ohio-3377, ¶ 9, citing *State v. Adams*, 62 Ohio St.2d 151, 157, 404 N.E.2d 144 (1980).

**{¶34}** Complicity is defined as:

(A) No person, acting with the kind of culpability required for the commission of an offense, shall do any of the following:
      (1) Solicit or procure another to commit the offense;
      (2) Aid or abet another in committing the offense;
      (3) Conspire with another to commit the offense in violation of section 2923.01 of the Revised Code;
      (4) Cause an innocent or irresponsible person to commit the offense.

R.C. 2923.03(A).

**{¶35}** In the matter at bar, the trial court instructed the jury as follows:

The state of Ohio presented a theory that the defendant acted in complicity with the principal offender in the commission of felonious assault in Count 1, theft in Count 3, and tampering with evidence in Count 4. A person who is complicit with another in the commission of a criminal offense is regarded as guilty as if - - guilty as if he personally performed every act constituting the offense. This is true even if he did not personally perform every act constituting the offense, or was not physically present at the time the offense was committed.

Before you can find the defendant guilty of complicity in the commission of a felonious assault in Count 1, theft in Count 3, and tampering with evidence in Count 4, you must find beyond a reasonable doubt that on or about the third day of January, 2021, in Lawrence County, Ohio, the defendant aided or abetted another in executing the offenses identified in Counts 1, 3 and 4.

Aided or abetted. Before you can find the defendant guilty of complicity by aiding and abetting, you must find beyond a reasonable doubt that the defendant supported, assisted, encouraged, cooperated with, advised, solicited, procured or incited the principal offender in the commission of the offense and that the defendant shared the criminal intent of the principal offender. Such intent may be inferred from the circumstances surrounding the offense, including but not limited to presence, companionship, and conduct before and after the offense was committed. The mere presence of the defendant at the scene of the offense is not sufficient to prove in and of itself that the defendant was an aider or abetter (Sic.).

**{¶36}** Newcomb does not challenge the language used by the trial court in instructing the jury, but rather that complicity was not supported by the evidence. We begin by first noting that although Newcomb in his assignment of error indicates he is challenging the instructions as to Counts One, Three and Four, he was found not guilty of tampering with evidence, Count Four, and in his brief, Newcomb attacks solely the theft offense, Count Three. Accordingly, we will focus our analysis on Count Three, the theft of the drone.

"When the evidence adduced at trial could reasonably be found to have proven the defendant guilty as an aider and abettor, a jury instruction by the trial court on that subject is proper." *State v. Perryman* (1976), 49 Ohio St.2d 14, 358 N.E.2d 1040, paragraph five of the syllabus, vacated in part on other grounds by *Perryman v. Ohio* (1978), 438 U.S. 911, 98 S.Ct. 3136, 57 L.Ed.2d 1156. "To support a conviction for complicity by aiding and abetting pursuant to R.C. 2923.03(A)(2), the evidence must show that the defendant supported, assisted, encouraged, cooperated with, advised, or incited the principal in the commission of the crime, and that the defendant shared the criminal intent of the principal. Such intent may be inferred from the circumstances surrounding the crime." *State v. Johnson* (2001), 93 Ohio St.3d 240, 2001-Ohio-1336, 754 N.E.2d 796, at the syllabus.

*State v. Dyer*, 4th Dist. Scioto No. 07CA3163, 2008-Ohio-2711, ¶ 19.

{¶37} As we previously stated, "circumstantial evidence and direct evidence inherently possess the same probative value." *Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph one of the syllabus.  The evidence adduced here is that Newcomb was acting as a principal offender in depriving Hindi of the drone and also as a complicit.  Newcomb knowingly and purposefully smacked the drone's remote control from Hindi's hand.  Further, Newcomb picked up the remote control and smashed it against his mailbox at which point he saw the drone just go everywhere.  Newcomb and Clark then physically assaulted Hindi and Newcomb threatened Hindi "last chance, leave or die here."

{¶38} Moreover, after Hindi left, it was Newcomb who picked up the two body cameras that fell out of Hindi's vest.  The same cameras that Clark testified he saw with the drone in Newcomb's firepit.  Newcomb, Aldridge and Clark were the only three present when Hindi was assaulted and the remote control was destroyed while the drone was in the air.  Out of those three, only Newcomb's property was being investigated for cockfighting, and Newcomb testified to observing the drone after he smashed the remote control.  This evidence viewed together with the evidence that the firepit was on Newcomb's property and his wife was adding paper and lit it, demonstrates Newcomb encouraged and assisted in permanently depriving Hindi from retrieving the drone and the remote control.

{¶39} Based on the evidence presented in the case, we do not find the trial court acted irrationally, arbitrarily, or unreasonably in instructing the jury on complicity.  We therefore, overrule Newcomb's second assignment of error.

ASSIGNMENT OF ERROR III

{¶40} In the third assignment of error, Newcomb argues the trial court erred in denying his Crim.R. 29 motion for acquittal as to Count Three, theft, because the state failed to present evidence that Newcomb obtained or exerted control over the drone.  Newcomb maintains that the state presented contradictory testimony and theories that the theft occurred because Newcomb smashed the remote control, but that also Newcomb grounded the drone and destroyed it.  Further, he argues that even if we find that the state established Newcomb exerted control over the remote control, the value of which is less than $1,000, he did not obtain or exert control over the actual drone.  Thus, the state failed to demonstrate an element of the offense to warrant a conviction of theft as a fifth-degree felony.  Newcomb again attacks Clark's testimony as being inconsistent and not credible since he did not witness who placed the drone and cameras in the firepit.  Finally, Newcomb asserts there was no evidence he aided or abetted anyone in procuring and placing the drone in the firepit. (Brief page 15).

{¶41} The state disagrees and reiterates its arguments presented in the first assignment of error.  According to the state, there was testimony from Hindi that Newcomb took the remote control and smashed it, then assaulted him and chased him away from the property in which he could not retrieve the drone. The

state further maintains that there was also evidence that Newcomb burnt the

drone, and there was evidence that the drone's value was $2,500.

Law and Analysis

{¶42} "A motion for acquittal may be granted only when, construing the

evidence most strongly in favor of the state, the evidence is insufficient to sustain

a conviction." *State v. Grate*, 164 Ohio St.3d 9, 2020-Ohio-5584, 172 N.E.3d 8, ¶

146. When reviewing whether the evidence is sufficient to sustain a conviction,

the focus is on the adequacy of the evidence. *See State v. Sims*, 4th Dist.

Athens No. 21CA15, 2023-Ohio-1179, ¶ 115. Thus, "[t]he standard of review is

whether, after viewing the probative evidence and inferences reasonably drawn

therefrom in the light most favorable to the prosecution, any rational trier of fact

could have found all the essential elements of the offense beyond a reasonable

doubt." *Id.*

{¶43} Under this assignment of error, Newcomb again solely challenges

his theft conviction. A finding that a conviction is supported by the manifest

weight of the evidence is "also dispositive of the issue of sufficiency." *State v.*

*Sims*, 4th Dist. Athens No. 21CA15, 2023-Ohio-1179, ¶ 120, citing *State v.*

*Waller*, 4th Dist. Adams No. 17CA1044, 2018-Ohio-2014, ¶ 30. Accordingly, as

we previously have sustained Newcomb's theft conviction under the first

assignment of error, we similarly sustain his conviction here and overrule his third

assignment of error.

ASSIGNMENT OF ERROR IV

**{¶44}** Under the fourth assignment of error, Newcomb presents several arguments challenging the admission of Detective Sergeant Bollinger's testimony identifying the Chevy tan truck as belonging to Newcomb's wife through its VIN number.  The detective obtained the information through a national data base. Newcomb argues the state failed to present a certified copy of either the national database or the state of Ohio database to certify the detective's VIN number record search.  Newcomb claims the hearsay evidence was admitted for the truth of the matter asserted, in which it was presented to establish Newcomb was the driver since the Chevy truck belonged to his wife.  The state did not present any exception to Evid.R. 802 that would have allowed the testimony to be admitted for the truth of the matter asserted.  The testimony was not presented due to unavailability of a witness, Evid.R. 803 or as a public record, Evid.R. 804.

**{¶45}** According to Newcomb, the admission of this hearsay evidence was not harmless evidence because the only other evidence linking Newcomb to the truck was the not credible testimony of co-defendant Clark.  The video and photo evidence established Clark was in the truck and his testimony identifying Newcomb as the driver only came about after he was offered a deal by the state. Therefore, "there exists reasonable possibility that the identification of the vehicle belonging to Defendant, through Det. Bollinger's hearsay testimony, contributed to his conviction for Count II-Felonious Assault."  Newcomb concludes that the testimony was improperly admitted in violation of the rules of evidence and constitutionally in violation of the Confrontation Clause.

{¶46} The state disagrees and asserts that Clark testified as to the ownership of the truck during trial and that it was Newcomb who was driving the truck at the time of the assault. This testimony was prior to Detective Sergeant Bollinger's testimony, so the detective's testimony was cumulative. Moreover, in response to an objection, the detective replied that the VIN number was run because the Chevy truck was missing a license plate, so it was conducted as part of the investigation. The detective was also instructed not to repeat what he was told by others, and to only limit his testimony to his personal knowledge. The state therefore maintains that the detective's testimony was properly admitted and if not, it was harmless error.

Law and Analysis

{¶47} We begin by outlining the line of questioning and answers presented at trial in the matter at bar. Detective Sergeant Bollinger was the state's final witness. During his testimony, the following occurred:

> A. With that Deputy Mullins had actually ran the VIN number because it did not have a license plate.
>         Mr. Tyack: Objection.
>         The Court: Basis?
>         Mr. Tyack: **Hearsay**. (Boldface added)
>         The Court: Was that part of the investigation that you conducted or independently verified?
>         The witness: Absolutely.
>         The Court: Okay. Then I'm going to allow you to respond to the question - - to the State of your personal knowledge based on your investigation, but not repeating what anybody else said or for the use of proving the truth of the matter asserted in that statement.
>         The witness: Yes, sir.
>         The Court: Can you reask (sic.) based on that admonition from the court?
>         Mr. Nord: Yes.
> By Mr. Nord:

Q. As part of your investigation with respect to this matter and the incidents which we've been discussing the next day - - or the entire yesterday and all day today, was there an investigation done with respect to the tan truck that was - - you indicated was at the residence of - - or not at the residence, but at the barn of the property owner that leased to Mr. Clark?

A. Yes.

Q. What was done with respect to that?

A. The VIN number - -

     Mr. Tyack: Objection. **Hearsay**. (Boldface added)

     The Court: Reask (sic.).

By Mr. Nord:

Q. As part of your investigation with respect to this matter and the incidents as alleged, did you obtain the VIN number of the vehicle?

A. I did.

Q. What else did you do with respect to your investigation concerning the tan truck?

A. The VIN number was on the radio log of the sheriff's office.

Q. Okay.

A. As being read from that property.

Q. Okay.

A. And then I verified that the VIN number belongs to Rebecca Newcomb, with a driver's license - - or with a license plate number of HIL1286.

Q. What's the - - if anything, what's the significance of the license plate number?

A. Because in the original report with Sergeant Easterling, it had quoted that the license plate number was HIL286. So it was one number off.

Q. One number off?

A. Yes.

Q. Okay. You've got access to or State's Exhibit No. 6 up there I believe.

A. Yes, sir.

Q. Have you seen that photograph before?

A. I have. This is what was provided to me.

Q. So that was provided to you as part of your investigation?

A. Yes, it was.

Q. And as part of your investigation you obtained the VIN number?

A. Yes. This is the vehicle that had the VIN number that was registered to Rebecca Newcomb, which is Mr. James Newcomb's - -

     Mr. Tyack: Objection. **Hearsay**. (Boldface added)

     The Court: Overruled. I think it's been established that it's been conducted through his investigation to verify that information.

     You may continue.

The witness: Mr. James Newcomb's wife.
By Mr. Nord:
Q. Oaky. What did you do to determine the VIN number, who the vehicle belonged to?
A. Well, I mean, everything we do is, you know, through national databases. The national crime database is where it was originally ran. I also ran it through - - it's a system called OHLEG, it's done and developed and everything held by the attorney general's office here in the state of Ohio.
Q. Okay. And through that investigation, is that how you learned who the vehicle belonged to?
A. Absolutely.

**{¶48}** As the record demonstrates, Newcomb raises for the first time on appeal an objection to the detective's testimony based on the Confrontation Clause, in which at trial he solely objected based on hearsay. "Generally, a defendant who fails to raise a Confrontation Clause issue during the trial court proceedings forfeits the right to present it for the first time on appeal." *State v. Russell*, 4th Dist. Ross No. 21CA3750, 2022-Ohio-1746, ¶ 90. Thus, objecting on one ground does not preserve additional objections not mentioned at trial. *Id*. Therefore, we will solely address Newcomb's hearsay claim.

**{¶49}** Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted in the statement." Evid.R. 801(C). A "statement" is defined as "(1) an oral or written assertion or (2) nonverbal conduct of a person, if it is intended by the person as an assertion." Evid.R. 801(A). And a "declarant" is "a person who makes a statement." Evid.R. 801(B).

> Hearsay is not admissible except as otherwise provided by the Constitution of the United States, by the Constitution of the State of Ohio, by statute enacted by the General Assembly not in conflict with a rule of the Supreme Court of Ohio, by these rules, or by other rules prescribed by the Supreme Court of Ohio.

Evid.R. 802.

**{¶50}** Generally, "[t]he admission or exclusion of relevant evidence rests within the sound discretion of the trial court." *State v. Sage*, 31 Ohio St.3d 173, 51 N.E.2d 343 (1987), paragraph two of the syllabus. Accordingly, "we review a trial court's hearsay rulings for an abuse of discretion." *State v. McKelton*, 148 Ohio St.3d 261, 2016-Ohio-5735, 70 N.E.3d 508, ¶ 97. An abuse of discretion "is more than a mere error of law or judgment; it implies that a trial court's decision was unreasonable, arbitrary or unconscionable." *State v. Martin*, 151 Ohio St.3d 470, 2017-Ohio-7556, 90 N.E.3d 857, ¶ 27, citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

> Testimony to explain police conduct is admissible as nonhearsay if it satisfies three criteria: (1) the conduct to be explained is relevant, equivocal, and contemporaneous with the statements, (2) the probative value of the statements is not substantially outweighed by the danger of unfair prejudice, and (3) the statements do not connect the accused with the crime charged.

*State v. Beasley*, 153 Ohio St.3d 497, 2018-Ohio-493, 108 N.E.3d 1028, ¶ 172, citing *State v. Ricks*, 136 Ohio St.3d 356, 2013-Ohio-3712, 995 N.E.2d 1181, ¶ 27.

**{¶51}** On January 3, 2021, Fahnestock was struck with a tan truck driven by Newcomb. The same tan truck was seen earlier by Hindi when Hindi was assaulted a second time by Newcomb. During this assault, Hindi was able to obtain the license plate number of the truck, which he recorded as HIL286, and on that same day, January 3rd, Hindi provided Sergeant Todd Easterling with the license plate number. Then on January 6th, Clark's landlord, who also resides on the same property as Clark, contacted the Sheriff's department and reported a

Chevy tan truck was randomly parked on his property. Deputy Mullins went to the property and took a photo of the truck, which was admitted as State's Exhibit 6. The Chevy tan truck did not have a license plate, and so the VIN number of the truck was recorded, and Deputy Mullins ran the VIN number in the national database.

{¶52} Detective Sergeant Bollinger testified that he is responsible for reviewing all deputies' reports relating to a case to determine whether additional investigation is required. He, thus, reviewed the January 3rd and 6th reports, and then on January 8th, Detective Sergeant Bolling himself went to Clark's property to check on the Chevy tan truck, but the truck was no longer there. Detective Sergeant Bollinger then obtained the VIN number through the radio log at the Sheriff's office from January 6th and verified the VIN number as belonging to a Chevy truck registered to Newcomb's wife that had a license plate number of HIL1286, which is one number off from the license plate number provided earlier by Hindi.

{¶53} As outlined above, Detective Sergeant Bollinger took several steps to identify the Chevy tan truck's owner. The first of which was to obtain the VIN number of the Chevy truck, which he got from the sheriff's radio log. The log was not admitted as an exhibit at trial. The VIN number in the log was not written down by Detective Sergeant Bollinger, so he was not the declarant. Detective Sergeant Bollinger then ran the VIN number through the Ohio Law Enforcement Gateway ("OLEG") database system, which identified the owner of the Chevy truck as belonging to Rebecca Newcomb, and further, that the truck's license

plate number was HIL1286. This information was admitted for the truth of the matter asserted to connect Newcomb to the felonious assault crime in Count Two. The state did not submit any evidence regarding the OLEG database or argue that the database was reliable and can be accessed as a public record. We therefore hold that the testimony was hearsay and did not meet any exception to explain the detective's police conduct.

{¶54} We, nonetheless, overrule Newcomb's assignment of error because even though the admission of Detective Sergeant Bollinger's identification of the Chevy tan truck as belonging to Newcomb's wife was erroneous, the admission was harmless as it was cumulative to other evidence admitted at trial. *See State v. Williams*, 38 Ohio St.3d 346, 350, 528 N.E.2d 910 (1988) (admission of hearsay that was cumulative to other admitted evidence constitutes harmless error.) Harmless error is "[a]ny error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded." Crim.R. 52(A).

{¶55} Hindi testified that Newcomb was in a tan truck when he exited and assaulted Hindi a second time. A tan truck rammed Fahnestock's SUV several times before Fahnestock lost control of the SUV and ended up sideways in a ditch. The tan truck stopped after striking Fahnestock and two passengers exited. One of the passengers was Clark, who also confirmed that Newcomb was the driver of the tan truck, later identified as a Chevy truck.

{¶56} Clark testified that approximately 30 minutes after Hindi left Newcomb's property, Newcomb got into the driver seat of the Chevy tan truck with Clark and another male getting into the front passenger seats. Clark was in

the truck when Newcomb rammed the back of Fahnestock's SUV several times. Clark said after Fahnestock flipped into the ditch, he told Newcomb to let him out. Newcomb then stopped the truck and both Clark and the other passenger exited. The next time Clark saw the truck was that evening when his landlord, who lives on the same property as Clark, asked Clark whose Chevy truck was parked in front of the barn. Clark recognized the truck as that belonging to Newcomb and the one Clark was a passenger in just hours earlier. It was the same truck that rammed into Fahnestock's SUV and the same truck as depicted in the photo in State's Exhibit 6. Clark stated that this Chevy truck is registered in Rebecca Newcomb's name, Newcomb's wife, but that James Newcomb is the one who drives it regularly.

{¶57} Wherefore, there is cumulative evidence demonstrating Newcomb was the driver of the Chevy tan truck when he struck Fahnestock's SUV, irrespective of Detective Sergeant Bollinger's testimony regarding the trucks VIN number. Accordingly, we overrule Newcomb's fourth assignment of error.

ASSIGNMENT OF ERROR V

{¶58} Before sentencing, Newcomb filed a motion arguing the Reagan Tokes Law ("ACT") was unconstitutional on its face. He presented four arguments. First, Newcomb claimed the ACT violates the separation-of-powers doctrine in which the executive branch, the Department of Rehabilitation and Corrections ("DRC"), can extend his sentence beyond the minimum prison term that was imposed by the judiciary branch. Second, Newcomb asserted the ACT

violates his right to a jury trial since his sentence can be increased beyond the

minimum sentence imposed at the disposition hearing.

{¶59} Third, Newcomb contended the ACT violates his right to due

process in which the presumption of release upon serving the minimum sentence

creates a protected liberty interest.  That liberty interest is violated where the

hearing under the ACT is not conducted by the sentencing judge, the hearing has

no structure, and the ACT fails to notify a defendant of what conduct triggers an

increase in the prison sentence.  Finally, Newcomb argued the ACT violates

double jeopardy claiming he is being sentenced twice for the same offense.

{¶60} At sentencing, Newcomb informed the trial court of his motion but

then stated that the trial court does not have jurisdiction to decide the issue due

to precedent from this court holding the issue was not ripe until he served his

minimum prison term.  Newcomb now raises the same four constitutional right

violations under this assignment of error.  He further states that since his

sentence, the Supreme Court has determined that the issue is ripe for review and

requests that we find the ACT unconstitutional.

{¶61} The state agrees that the issue is ripe for review but disagrees that

the ACT is unconstitutional.  The state asserts that the DRC does not extend a

defendant's sentence beyond that imposed by the trial court.  A defendant's

maximum sentence is the sentence imposed by the trial court and the DRC

cannot extend a defendant's prison term beyond the maximum sentence.

Accordingly, the state maintains that the ACT is constitutional.

Law and Analysis

{¶62} The trial court did not rule on Newcomb's motion that the ACT was unconstitutional following our precedent at the time in which we held that the issue was not ripe for review until a defendant serves his minimum prison term. *See State v. Walker*, 4th Dist. Washington No. 20CA24, 2021-Ohio-2693, ¶ 20 ("the constitutionality of Reagan-Tokes sentencing is not yet ripe because on direct appeal an appellant has yet to serve his or her minimum prison term, which is the first instance in which the department of corrections could take any action that affects the length of appellant's incarceration.")  Since Newcomb's sentencing, however, the Supreme Court of Ohio in *State v. Maddox* held that "a criminal defendant's challenge to the constitutionality of R.C. 2967.271 is ripe for review on the defendant's direct appeal of his or her conviction and prison sentence."  168 Ohio St. 3d 292, 2022-Ohio-764, 198 N.E.3d 797, ¶ 22.

{¶63} Generally, we remand issues to the trial court that were not addressed by the court, but in this case, we do not.  This is because we conduct a de novo review of constitutional challenges to a statute.  *See State v. Rister*, 4th Dist. Lawrence No. 21CA17, 2023-Ohio-1284, ¶ 14.

{¶64} In *State v. Hacker* the Supreme Court addressed three similar facial constitutional challenges to the ACT: separation-of-powers doctrine, right to a jury trial, and procedural due process.  __ Ohio St.3d __ , 2023-Ohio-2535, __ N.E.3d __ , ¶ 1.  The Supreme Court outlined the application of the ACT which provides for an indefinite sentence for first-degree and second-degree felony offenders in which life imprisonment is not an available sentence.  *Id.* at ¶ 7.  The indefinite sentence has a minimum prison term and a maximum prison term that

are imposed at disposition by the trial court. *Id.* The ACT presumes that a

defendant will be released after completing the minimum prison term, but that

presumption can be rebutted by the DRC. *Id.* at ¶ 9.

{¶65} In rejecting the claim that the ACT violates the separation-of-powers

doctrine, the Supreme Court held:

> Once the trial court imposes minimum and maximum prison terms under R.C. 2929.14(A)(1)(a) or (2)(a), the sentence for the offender has been set. "[D]efendants who have been sentenced under the Reagan Tokes Law have received the entirety of their sentences and the sentences have been journalized." *State v. Maddox*, 168 Ohio St.3d 292, 2022-Ohio-764, 198 N.E.3d 797, ¶ 16. If the DRC determines that the presumption of release has been rebutted, it may maintain the offender's incarceration—but only within the bounds set by the trial court. It does not impede the court's exercise of its judicial powers.
> \* \* \* Should the DRC determine that the presumption of release is rebutted as the result of an offender's behavior during his incarceration, the additional time that the offender may have to serve is limited by the sentence that has already been imposed by the trial court. R.C. 2967.271(D).
> \* \* \*
> We conclude that allowing the DRC to rebut the presumption of release for disciplinary reasons does not exceed the power given to the executive branch and does not interfere with the trial court's discretion when sentencing an offender. Therefore, we hold that the Reagan Tokes Law does not violate the separation-of-powers doctrine.

*Id.* at ¶ 16, 23, 25.

{¶66} The Supreme Court also rejected the argument that the ACT

violates a defendant's right to a jury trial holding:

> But here, the "prescribed range of penalties" is determined upon the return of a guilty verdict—or, as in the cases before us, when the offender pleads guilty to the charged offenses. Once an offender is found guilty of an eligible offense, the trial court has the discretion to sentence him to any minimum sentence within the appropriate range. R.C. 2929.14(A)(1)(a) and (2)(a). And the maximum sentence is calculated based on that minimum

> sentence. *Id.*; R.C. 2929.144(B)(1). Because no determination by the DRC regarding Simmons's behavior while in prison will change the range of penalties prescribed by the legislature and imposed by the trial court, the right to a jury trial is not implicated.

*Hacker*, __ Ohio St.3d __ , 2023-Ohio-2535, __ N.E.3d __ , at ¶ 28.

{¶67} With regard to the procedural due process challenge, the Supreme Court first held that the presumption of release upon serving the minimum prison term "creates an interest that entitles offenders to due-process protection." *Id.* at ¶ 36. Accordingly, due process requires a hearing before an offender is deprived of that right. *Id.* at ¶ 37. And the "Reagan Tokes Law provides the offender with a hearing before his incarceration is maintained. So, it does not, by its terms, deprive an offender of 'notice and an opportunity to be heard * * * at a meaningful time and in a meaningful manner,' *Hochhausler*, 76 Ohio St.3d 455 at 459, 668 N.E.2d 457." *Id.* at ¶ 39.

{¶68} Pursuant to the Supreme Court's decision in *Hacker*, which we are bound to follow, we overrule Newcomb's arguments that the ACT violates the separation-of-powers doctrine, his right to a jury trial, and his right to due process.

{¶69} Newcomb additionally argues that the Act violates his right against double jeopardy claiming he is being punished twice for the same offense. We overrule this argument as well. The Double Jeopardy Clause protects against three abuses: (1) "a second prosecution for the same offense after acquittal," (2) "a second prosecution for the same offense after conviction," and (3) "multiple punishments for the same offense." *North Carolina v. Pearce,* 395 U.S. 711,

717, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), *overruled on other grounds, Alabama v. Smith,* 490 U.S. 794, 109 S.Ct. 2201, 104 L.Ed.2d 865 (1989).

{¶70} We find persuasive a decision by the Third District Court of Appeals that concluded the first two double jeopardy protections are not implicated under the ACT.  In *State v. Harrison*, the Third District held:

> application of the Reagan Tokes law does not constitute double jeopardy under the law. Double jeopardy prohibits one from being retried for the same offense. *State v. Mutter*, 150 Ohio St.3d 429, 2017-Ohio-2928, 82 N.E.3d 1141. The decision whether an inmate serves more than the minimum sentence is not a retrial of the original offense, but is based upon subsequent behavior. The sentence may not be extended more than the maximum sentence originally imposed by the trial court. Thus the double jeopardy clause of the constitution is not implicated in this matter.

3d Dist. Logan No. 8-22-05, 2022-Ohio-2537, ¶ 25, *appeal allowed*, 168 Ohio St. 3d 1470, 2022-Ohio-4380, 199 N.E.3d 543, ¶ 25, and *appeal dismissed as improvidently allowed sub nom. In re Cases Held for State v. Hacker & State*, 2023-Ohio-3863, ¶ 25.

{¶71} The third protection under the double jeopardy clause is the protection against multiple punishments.  Contrary to Newcomb's argument, the ACT's indefinite sentence scheme does not violate this protection.  "The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution affords protections against the imposition of multiple criminal punishments for the same offense."  *State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.3d 860, ¶ 16, citing *Hudson v. United States*, 522 U.S. 93, 99, 118 S.Ct. 488, 139 L.Ed.2d 450 (1997).  The prohibition against multiple punishments is codified in R.C. 2941.25, which relates to allied offenses.

{¶72} In the case at bar, Newcomb does not claim that his felonious assault conviction involving Fahnestock as the victim is an allied offense to his

assault or theft convictions. Newcomb received one indefinite prison sentence for his felonious assault conviction. The rebuttal presumption of serving more than the minimum prison term will be based on new behaviors that Newcomb commits while in prison, and not based on his conduct in committing felonious assault. *See* R.C. 2967.271(C). Moreover, once Newcomb serves the maximum prison term of six years that was imposed by the trial court at sentencing, he must be released from prison.

{¶73} Accordingly, we find that the ACT does not violate the separation-of-powers doctrine, double jeopardy, Newcomb's right to a jury trial, and his right to due process. We therefore overrule his fifth assignment of error.

CONCLUSION

{¶74} Having overruled Newcomb's five assignments of error, we affirm the trial court's judgment entry of conviction.

**JUDGMENT AFFIRMED.**

## <u>JUDGMENT ENTRY</u>

It is ordered that the JUDGMENT IS AFFIRMED and appellant shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Lawrence County Common Pleas Court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Smith, P.J. and Hess, J.:  Concur in Judgment and Opinion.


For the Court,


BY: _____
Kristy S. Wilkin, Judge


### NOTICE TO COUNSEL

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**